UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DORSEY E. MADDOX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civ. Action No. 4:12-cv-00136 |
| | § | |
| CROWN CORK AND SEAL | § | |
| COMPANY, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Memorandum in Support of Motion to Remand ("Motion"). (Doc. No. 5.) After considering the Motion, Defendants' Response, and the applicable law, the Court concludes that the Motion should be **GRANTED.**

### I. BACKGROUND

In December 2011, Dorsey E. Maddox ("Maddox" or "Plaintiff") filed this lawsuit in state court against Crown Cork and Seal Company, LLC ("the Company"), Dennis Pietzsch ("Pietzch"), Douglas Simmons ("Simmons") and Wayne Basler ("Basler") (hereinafter, collectively "Defendants"). Plaintiff, a 49-year-old African-American male who has been employed at the Company since 1984, alleges that he has been repeatedly discriminated against. (Plaintiff's Original Petition, Doc. 1-4 ¶ 13.) Plaintiff explains that, throughout 2007, tools from his toolbox would disappear, only to reappear later. (*Id.* ¶ 14.) Following the election and inauguration of Barack Obama, Plaintiff claims, one of Plaintiff's coworkers said to him, "[T]he price of watermelon is going to go down 3 cents a pound because Obama won [the U.S. Presidential election]." (*Id.* ¶ 15.) Plaintiff avers that,

1

when he applied for a new position, Simmons, another co-worker, tried to sabotage Plaintiff's efforts. (*Id.* ¶ 21.) At a meeting, Plaintiff complains, Simmons reported that Maddox was lazy, unreliable, lacked knowledge of the machines, and was a trouble maker. (*Id.*) According to Plaintiff, Pietzch, another co-worker, was in the room with Simmons and failed to correct the false statements. (*Id.*) When Plaintiff reported his concerns of discrimination and harassment, Basler, the plant superintendent, allegedly told Plaintiff that he worked too much and should "go fishing." (*Id.* ¶ 22.)

To make matters worse, Plaintiff contends that he received, in March 2009, a memo in his mailbox with a Nazi drawing on it. (*Id.* ¶ 23.) Although Plaintiff complained, he avers that management took no reasonable steps to prevent similar acts from occurring in the future. (*Id.*) Indeed, Plaintiff states that in April 2009, he received yet another offensive memo in his mailbox, this one with a depiction of Barack Obama's birth certificate. (*Id.* ¶ 24.) Plaintiff alleges unlawful race and age discrimination in violation of the Texas Commission on Human Rights Act. (*Id.* ¶¶ 27-35.) Additionally, Plaintiff brings allegations against Pietzch, Simmons, and Basler for intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 36-45.)

Defendants removed this case on the grounds that the non-diverse defendants, Pietzch, Simmons, and Basler, had been fraudulently joined. (Doc. No. 1.) Plaintiff then filed this Motion, seeking to remand this case to state court. In his Motion, Plaintiff argues that this lawsuit does not involve a federal question, and furthermore that the non-diverse defendants are properly joined. (Mot. Dismiss at 2-3.) Plaintiff urges that, as his claims of IIED arise out of, and are closely connected to, his claims against the Company, the non-diverse defendants were properly joined pursuant to Texas Rule of Civil Procedure 40. (*Id.*

at 3.) Additionally, Plaintiff objects that Basler did not join in the removal or file a written consent of removal. (*Id.* at 5.) For all of these reasons, Plaintiff insists that remand is proper. Defendants filed a Response to Plaintiff's Motion. (Doc. No. 6.) Plaintiff did not file a Reply.

## II. LEGAL STANDARD

"[U]nder the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined non-diverse and/or in-state defendant." *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006) (citing *Smallwood v. Illinois Cent. R. Co.*, 38 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed. 755 (2005)). "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 38 F.3d at 573. The Fifth Circuit "recognize[s] two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Importantly, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282. 286 n.4 (5th Cir. 2000)).

Ordinarily, a court may determine whether a plaintiff can recover under state law against the allegedly improperly joined defendant by looking at the allegations in the complaint, and analyzing them as a court would analyze a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *Id.* Alternatively, if a plaintiff has misstated or omitted discrete facts that would determine the propriety of joinder, a court may conduct a summary judgment analysis. *Id.* A defendant's burden of persuasion to show fraudulent joinder is "'a heavy one,'" *Zermeno v. McDonnell Douglas Corp.*, 246 F.Supp.2d 646, 653 (S.D. Tex. 2003) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981)), and "'all disputed questions of fact and all ambiguities in the controlling state law'" must be "'resolved in favor of the nonremoving party,'" *id.* (quoting *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)). Nonetheless, "the possibility of recovery must be reasonable, not merely hypothetical or speculative." *Id.*

### III. ANALYSIS

Defendants do not allege that Plaintiff has committed actual fraud in the pleading of his jurisdictional facts. (Resp. to Mot. Dismiss ¶ 2.) Therefore, this Court examines whether Plaintiff is able to establish a cause of action against the allegedly fraudulently joined defendants in state court. Under Texas law, "a plaintiff may not bring an IIED claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.*, 502 F.Supp.2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447). Indeed, "[e]ven if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id.* Therefore, courts have found that employees' IIED claims against supervisors are precluded when there are other statutory remedies available against the employer. *Id.*; *Muniz v. El Paso Marriott*, No. EP-09-CV-274-KC, 2009 WL 4878619, at

\*3 (W.D. Tex. Dec. 8, 2009) ("Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as the anti-discrimination statutes."); *Rawlings v. Travelers Property Cas. Ins. Co.*, No. 3:07-CV-1608-O, 2008 WL 2115606, at \*4 (N.D. Tex. May 20, 2008) ("[A] plaintiff cannot bring a claim for intentional infliction of emotional distress against a *defendant supervisor* where the plaintiff could bring a state statutory claim or other tort claim against *plaintif's [sic] employer* based on the same conduct alleged. Accordingly, for Plaintiff to have stated a claim on which she has a reasonable basis of recovery against … her former supervisor, Plaintiff's IIED claim cannot be based on facts that could form the basis of any workplace harassment or discrimination claim at all, even an action solely against her employer." (citations omitted)); *Pacheco*, 502 F.Supp.2d at 512.

Plaintiff "has not attempted to distinguish the conduct which supports the IIED claim from the conduct which supports the statutory workplace claims." *Muniz*, 2009 WL 4878619, at \*3. Rather, Plaintiff "is attempting impermissibly to predicate an IIED claim on the same conduct which underpins" his statutory claims. *Id.* Therefore, Pietzch, Simmons, and Basler have been fraudulently joined. Plaintiff also cannot prevail on his argument that this case is not properly before this Court because the Company has not obtained the consent of one of the co-defendants. "[A]s a general rule, removal requires the consent of all co-defendants." *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 814 (5th Cir. 1993). However, "application of this requirement to improperly or fraudulent joined parties [in a case involving alleged fraudulent joinder] would be nonsensical, as removal in …

5

[such a case] is based on the contention that no other proper defendant exists." *Id. See also Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007).

Nonetheless, the Court concludes that it must remand this case. Defendants, as the parties seeking to invoke diversity jurisdiction, bear the burden of establishing that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). The Fifth Circuit has explained "that '[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds' the jurisdictional amount." *Id.* at 638-39 (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)). Defendants may fulfill this burden in one of two ways. *Id.* at 639. "First, jurisdiction will be proper if 'it is facially apparent' from the plaintiffs' complaint that their 'claims are likely above [$75,000].'" *Id.* (quoting *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). Second, "[i]f the value of the claims is not apparent, then the defendants 'may support federal jurisdiction by setting forth the *facts*—[either] in the removal petition [or] by affidavit—that support a finding of the requisite amount.'" *Id.* (quoting *Allen*, 53 F.3d at 1335).

Defendants have not met their burden here. It is not facially apparent from Plaintiff's complaint that the amount in controversy exceeds $75,000, especially as Plaintiff's damages are limited by the fact that Plaintiff is still currently employed at the Company. Nor is it facially apparent from the Complaint that any punitive damages would likely push the amount in controversy above $75,000. *See, e.g., Cox v. Liberty Mut. and Credit Collection Services*, No. 3:10-CV-1956-M, 2011 WL 98374, at *2 (N.D. Tex. Jan. 12, 2011) ("Here, it is not facially apparent that $348 in economic damages, plus an

6

unspecified amount of mental anguish damages, punitive damages, and limited attorney's fees, is more likely than not to equal or exceed $75,000. In order for Plaintiff to be awarded damages above the jurisdictional amount, he must be awarded other sums of more than 216 times his economic damages. There is insufficient proof for the Court to find that to be a likely result, where Plaintiff asserts an economic loss based on paying $348 he claims was not owed."); *Stout v. Smithfield BioEnergy, LLC*, No. 3:10-CV-1185-M, 2010 WL 5487843, at *5 (N.D. Tex. Dec. 30, 2010) ("In order for Wendy Bartiett—the Plaintiff who claims $12,450.00 in compensatory damages, the greatest amount sought by any Plaintiff—to be awarded damages above the jurisdictional minimum, she must be awarded punitive damages equal to more than five times her compensatory damages.… Defendants have not shown any evidence of conduct that would entitle any of the Plaintiffs to a punitive damages award in excess of five times compensatory damages."); *H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 329 (5th Cir. 2000) ("There is no evidence of conduct by [defendant] that would support punitive damages awards equal to roughly 50 to 690 times actual damages, the amount necessary to bring the total damages above the statutory minimum."). Additionally, Defendants present evidence that the difference between Plaintiff's current salary and the salary for the position he was allegedly denied is only $1.50 per hour. (Doc. No. 11, Ex. A to Supplemental Briefing in Opposition to Motion to Remand, Affidavit of Demetria Durden ¶ 3.) Defendants' attempts to push the amount in controversy above $75,000 by estimating the amount of attorney's fees (only $20,000) and the cost of altering Defendants' "matrix" hiring system (for which no proposed cost is presented) are not convincing. (Supplemental Briefing in Opposition to Motion to Remand at 3-4.) Defendants try to bolster their argument by pointing to the Fifth

Circuit's reasoning in *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003), a case in which the plaintiff reported that she was incurring an economic loss at the rate of $100,000 per year and had already suffered a loss of $13,000. Plaintiff's income is considerably lower than the plaintiff's income in *White*, and Plaintiff has not been discharged. Hence, Defendants' comparison with *White* is unavailing. Given that Defendants have not proven by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court must remand this case.

### IV. CONCLUSION

For the reasons explained above, Plaintiff's Motion to Remand is **GRANTED.** This case is remanded to the 240th Judicial District of Fort Bend County, Texas, where it originated.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 30th of April, 2012.

_____
**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**